UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY N. HATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-00858-TWP-TAB |
| | ) | |
| CHRISTOPHER SMITH, | ) | |
| THE GEO GROUP INC., | ) | |
| STORMS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT, AND OTHER PENDING MOTIONS, AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Christopher Smith ("Officer Smith"), The Geo Group Inc., ("Geo Group") and Storms ("Lt. Storms") (collectively, the "Defendants") (Dkt. 57). Also pending are *pro se* Plaintiff Timothy Hatton's ("Mr. Hatton") Belated Motion to Amend Complaint (Dkt. 46), Motion to Seal Preliminary Witness List (Dkt. 48), and Motion to Appoint Counsel (Dkt. 49). Mr. Hatton, an inmate in the custody of the Indiana Department of Correction ("IDOC"), filed an Amended Complaint alleging the Defendants subjected him to unconstitutional conditions of confinement and retaliated against him for protected First Amendment activity. For the reasons stated below, summary judgment is **granted in part and denied in part,** Mr. Hatton's request for recruitment of counsel is **granted,** and his motions to amend and seal are **denied**.

**I. STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Hatton and draws all reasonable inferences in his favor as the non-moving party. *Khungar*, 985 F.3d at 572–73.

### A.    The Parties

At all relevant times, Mr. Hatton was an inmate in the custody of the IDOC at the New Castle Correctional Facility ("New Castle") (Dkt. 20 at 1). Officer Smith was a correctional officer, Lt. Storms was a supervisor, and both were employed by GEO Group, the company contracted by

IDOC to operate New Castle. *Id*. at 1–2. The GEO Group is a for-profit corporation that owns, operates, and manages correctional and reentry facilities, including prisons such as New Castle.

**B.     Procedural Background**

On July 14, 2022, Mr. Hatton filed a separate action in this court, *Hatton v. Storms, et al.*, 1:22-cv-1417-MPB-MKK (S.D. Ind. Jul. 14, 2022) ("*Hatton-1*"). In that action, Mr. Hatton attempted to bring First Amendment and Eighth Amendment claims against several defendants but the court found they were improperly joined and severed them (*Hatton-1*, Dkts. 26, 57). The Notice of Lawsuit and Waiver issued to the remaining defendants was docketed on December 22, 2022. *See id.* at (*Hatton*-1, Dkt. 27). Mr. Hatton's Amended Complaint in this case—which advances similar Eighth Amendment claims as his prior suit—contends that Officer Smith, Geo Group, and Lt. Storms retaliated against him for naming them in the earlier lawsuit—*Hatton-1* (Dkt. 20 at 2) ("All claims stem from complaints mentioned in case no. 1:22-cv-1417-MPB-MKK . . . I was taken to seg out of retaliation for that complaint and the following occurred: On July 12, 2022[.]").

**C.     The events of July 2022**

On July 12, 2022, "[Mr. Hatton] was brought to the Restricted Housing Unit at New Castle and placed in the rec cage around noon." (Dkt. 59-1 at 2). Officer Smith left Mr. Hatton in the rec cage for five hours, "harassed [him], sexually harassed, retaliated, and more" ultimately leading to Mr. Hatton urinating on himself (Dkt. 70 at 2, 7). Thereafter, "Smith basically laughed and left [Mr. Hatton] there for another hour or two." *Id*. at 7. Then, on July 15 and 21, 2022, Officer Smith "was bragging about leaving offenders in the cage and making them urinate/defecate [in order] to write them up [for disciplinary charges]." *Id*. at 5. On July 26, 2022, Officer Smith did the same thing to another inmate—the inmate told Officer Smith he had to use the restroom and Officer

3

Smither replied, "I don't care, piss in the rec cage."[1] *Id*. Officer Smith also previously "came to [Mr. Hatton's] door window [and] said [he] was going to 'fuck' [Mr. Hatton and] made inappropriate gestures." *Id*. On July 25, 2022, Officer Smith "slammed [Mr. Hatton's] food tray on [Mr. Hatton] when [Mr. Hatton] was trying to hand him [his] trash." *Id*. Officer Smith also banged on Mr. Hatton's cell door. *Id*. Officer Smith attest that he did not bang on Mr. Hatton's door for any nefarious reasons; rather, what Mr. Hatton heard was him performing pipe checks, which was a part of his job duties at that time. (Dkt. 59-5).

Also on July 12, 2022, Officer Kidd filed a notice of disciplinary hearing against Mr. Hatton for the alleged offense of "Bodily Fluid/Fecal Waste." (Dkt. 59-4 at 7). On July 14, Mr. Hatton filed a grievance against Officer Smith which read:

> I was brought to [the Restricted Housing Unit] and placed in the rec cage for almost 5 hours by CO Smith. I told Smith I needed to use the bathroom and I haven't been able to get a bathroom for several hours. I then had an accident on myself. He then came back and yelled at me about it like it was my fault.

(Dkt. 59-3 at 1). Lay witness, inmate David Joiner, submitted a sworn written statement in lieu of "witness appearing at hearing" which stated, "I heard offender in cage across from me ask to use the restroom." (Dkt. 59-4 at 11).

According to Lt. Storm, July 12, 2022, was an extremely busy day in the Restricted Housing Unit (Dkt. 59-1 at 2). Sgt. Rucker, Lt. Storm and two other officers were on the unit where they were dealing with "suicidal inmates, multiple escorts necessary to the intelligence and investigations offices, releases to the General Population, and even one trip return." *Id*. at 2–3. Staff were also busy with "searches of 3 intakes to the unit and changing them out to [Restricted

---

[1] Officer Smither testified that he "does not recall the situation at all as alleged," that he did not leave Mr. Hatton in the rec cage for hours until he soiled himself, and he did not brag to about it (Dkt. 59-5 at 2). He also testified that he did not make derogatory comments to harass or terrorize Mr. Hatton. *Id*. at 2, 4. But as required, the Court recites the evidence in the light most favorable to Mr. Hatton and draws all reasonable inferences in his favor.

Housing Unit] clothing, as well as staff needing to obtain mattresses and bedding for these intakes and place them in their newly assigned cells." *Id*. at 3.

Lt. Storm attests that all intakes were placed in their cells around 16:00 (4:00 p.m.) *Id*. at 2. However, Lt. Storms does not recall seeing Mr. Hatton in the rec cage that day, and "[Lt. Storms] did not preserve the video footage" for July 12, 2022. *Id*. Lt. Storms also attests that New Castle staff are "trained and advised to process an offender and place them in their cells from the rec cages within an hour, barring exceptions that do sometimes occur, depending on the level of activity on the unit." *Id*. Lt. Storms spoke with Mr. Hatton later in the day on July 12, 2022, during mail call, and Mr. Hatton did not mention any of his allegations to Lt. Storms. *Id*.

According to Lt. Storms, Geo Group "neither has a policy allowing for the alleged Constitutional violations, nor does it have a practice of allowing such violations to occur by way of 'turning a blind eye.'" *Id*. at 3.

### III. DISCUSSION

Upon the screening of Mr. Hatton's Amended Complaint, the Court allowed his First Amendment retaliation claim against Officer Smith, Eighth Amendment claims against Officer Smith and Lt. Storms, and policy and practice claim against GEO Group to proceed (Dkt. 21). Mr. Hatton alleges the Defendants retaliated against him and violated his rights, sexually and otherwise harassed him, and took him to segregation as an act of retaliation due to his filing of *Hatton-1*.

Defendants seek judgment as a matter of law on each claim, arguing that the allegations against them are baseless and threadbare. The Court will address Mr. Hatton's claims in turn.

**A.  Retaliation Claims**

To succeed on a First Amendment retaliation claim, Mr. Hatton must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First

Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the Defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the Defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to Hatton to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute that Mr. Hatton was engaged in protected First Amendment activity by filing his prior lawsuit, so the Court focuses on the second and third elements.

1. **Deprivation Likely to Deter Future First Amendment Activity**

Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020).

Mr. Hatton alleges three deprivations that deterred his future First Amendment Activity. Defendants do not address this element in his motion for summary judgment and appear to concede that holding an inmate in a cage with no access to a bathroom until he is forced to soil himself and then filing disciplinary charges against him for it would deter a person of ordinary firmness. The Court agrees.

Mr. Hatton also alleges that Officer Smith retaliated against him beyond the July 12 incident by withholding meals, sexually harassing him, and neglecting him (Dkt. 21 at 3). The only evidence Mr. Hatton designates for this retaliation is Officer Smith's comment that "[he] was going to 'fuck' me" while making gestures and one occasion when Officer Smith "slammed [my] food

tray on me when I was trying to hand him my trash." (Dkt. 70 at 5). As deplorable as such conduct is, verbal harassment and rude comments by prison staff does not violate the Constitution. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Moreover, unprofessional conduct likewise does not violate the Constitution. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987).

In his response to Defendants' Motion for Summary Judgment, Mr. Hatton includes an affidavit from another inmate, Stephen Smith, dated October 18, 2023, which states that Officer Smith offered him and other inmates $500.00 to assault or stab Mr. Hatton (Dkt. 70 at 6). In none of his prior filings does Mr. Hatton mention any allegation that Officer Smith tried to put a "hit" out on him in retaliation and no such allegation was screened through by this Court. In addition, Mr. Hatton did not seek to include it in his proposed second amended complaint filed on January 7, 2025 (Dkt. 46-1). Because Mr. Hatton has not designated any evidence that he was aware of such retaliatory conduct during the relevant time, a reasonable jury could not find that a person of ordinary firmness would have been deterred by it.

### 2. <u>Motivating Factor</u>

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats a retaliatory arrest claim unless plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Nonetheless,

"[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 681 (cleaned up) (finding that the fact that an inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to his retaliation claim because another, non-retaliatory motive existed).

Mr. Hatton's Amended Complaint lists two motivating factors for Officer Smith's retaliation: his prior lawsuit's Eighth Amendment claims against the Defendants and his complaints to Officer Smith's supervisors in July 2022. The undisputed evidence shows that the first alleged motivating factor, Mr. Hatton's prior lawsuit, was filed two days after the alleged retaliation. Mr. Hatton's prior lawsuit was filed on July 14, 2022. *See Hatton-1*. Defendants' alleged retaliation for that lawsuit occurred on July 12, 2022 (Dkt. 20 at 2–3). Although Mr. Hatton made many allegations in his prior suit, his Complaint in this matter explicitly states, "I was taken to seg out of retaliation *for that complaint* and the following occurred." *Id*. at 2. It cannot be possible that Defendants' conduct on July 12 was motivated by the lawsuit that Mr. Hatton filed on July 14. Mr. Hatton has adduced no evidence that Defendants were even aware of the suit prior to the Court's issuance of a Notice of Lawsuit and Waiver on December 22, 2022.

With respect the second motivating factor, the Court has already explained that Officer Smith's conduct after July 12, 2022, which would include any conduct in retaliation for Mr. Hatton's reports to Officer Smith's supervisors, would not have deterred a person of ordinary

8

firmness. A reasonable jury could not conclude that Defendants violated Mr. Hatton's First Amendment rights.

Accordingly, Lt. Storms and Officer Smith are entitled to summary judgment on Mr. Hatton's retaliation claims.

**B.**     **Conditions of Confinement Claims**

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

In their Motion for Summary Judgment, Defendants focus on the five hours that Mr. Hatton was left in a rec cage, which caused him to soil himself when he did not have access to a bathroom. They argue that this deprivation, even if proven, is not enough to state an Eighth Amendment claim and that, in any event, they are excused from liability because the unusually large amount of

9

demands on staff prevented them from taking Mr. Hatton back to his cell sooner (Dkt. 58 at 9–11). The Court is not persuaded.

Temporarily depriving a prisoner access to a toilet may violate the Eighth Amendment. *White v. Knight*, 710 F. App'x 260, 261 (7th Cir. 2018). The facts and circumstances surrounding the event determines whether deprivation of access to a toilet crosses the line from the "'restrictive and harsh' conditions [that] may be normal in a Constitution-compliant prison," *White*, 710 F. App'x at 261, to a condition that implicates harm of constitutional magnitude.

In *White*, the plaintiff alleged that he was subjected to unconstitutional conditions of confinement when he was restricted to toilet access once every two hours during temporary lockdowns. White alleged that because of this restriction, he had to defecate on his cell floor and in a bag, causing him post-traumatic stress disorder. *Id*. He further alleged that on one occasion when he asked a guard to be able to use the bathroom, the guard "told him to 'shit on himself.'" *Id*. At screening, the district court found that "limiting toilet access to once every two hours during lockdowns does not amount to cruel and unusual punishment and therefore determined that White did not state an Eighth Amendment claim." *Id*. The Seventh Circuit affirmed the district court's dismissal of the complaint, reasoning that no judicial decision "suggests that the temporary imposition, during lockdowns, of a once-every-two-hours limit on the use of a toilet violates society's minimum standards of decency under *Rhodes* or yields a serious risk of causing post-traumatic stress disorder." *Id*. at 262 (referencing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Here, Mr. Hatton was left in the cage far longer than the inmate in *White*. Mr. Hatton's claim is that he was left in the cage without a restroom for at least five hours. Lt. Storms testified that, on July 12, "[Mr. Hatton] was brought to the Restricted Housing Unit and placed in the rec cage around noon" and "all intakes were placed in their cells around 4:00 pm"—which is at least

four hours, but Lt. Storms "did not preserve the video footage" which would confirm his testimony. (Dkt. 59-1 at 2). In addition, in *White* the delay was a temporary imposition, due to a lockdown. Here, the delay was not due to a lockdown, rather, it was just a busy day. At minimum, there is a disputed material fact concerning how long Mr. Hatton was left in the cage without a restroom.

However, it is not just the five hours in a rec cage that Mr. Hatton complains of. He was also subjected to disciplinary charges for soiling himself (Dkt. 59-4 at 6). Defendants argue that, because Officer Kidd filed the disciplinary charges, the evidence in the record does not support an inference that they were personally involved in any constitutional deprivation (Dkt. 58 at 9). However, both Mr. Hatton's testimony and his disciplinary record contain admissible evidence that Officer Smith personally left Mr. Hatton in the rec cage and chose not to let him out to go to the bathroom when asked (Dkt. 59-4 at 5; Dkt. 70 at 2). In addition, Mr. Hatton's lay witness confirms that he heard Mr. Hatton state that he needed to use the restroom. The designated evidence is sufficient to create a dispute of material facts regarding Officer Smith's personal involvement (that he was subjectively aware of Mr. Hatton's need to use the restroom) and culpable state of mind (that he refused to take steps to correct the conditions), showing deliberate indifference.

Nevertheless, even assuming no such factual dispute, a reasonable jury could find that initiating discipline against an inmate in such conditions—when defendants admit they were too busy to follow their own protocols—goes far beyond depriving Mr. Hatton of "the amenities, conveniences and services of a good hotel" and falls short of providing "constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235–1236 (7th Cir. 1988) (Dkt. 58 at 10). The choice between suffering for hours in a locked cage without a restroom and facing disciplinary sanctions is not a civilized one at all. Common sense and human decency suggest that it is wrong to leave someone without a restroom for five hours and then subject them to disciplinary sanctions

for soiling himself. In addition, A reasonable jury could conclude that it was intentional and not the result of compelling penological reasons beyond Defendants' control. Mr. Hatton's testimony concerning Officer Smith's conduct is sufficient to create a question of material fact regarding the reason he was left in the rec cage for five hours, and is sufficient to support the inference that an injury rising to the level of a Constitutional violation occurred. Accordingly, summary judgment is **denied** as to Mr. Hatton's Eighth Amendment claim against Officer Smith.

Mr. Hatton, however, has not designated any evidence that would allow an inference that Lt. Storms was personally responsible for any constitutional violation. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.* Accordingly, summary judgment is **granted** as to Lt. Storms on Mr. Hatton's conditions of confinement claims.

C.   **Practice or Custom Claims against GEO Group**

The Court now turns to whether GEO Group is entitled to summary judgment. Private corporations acting under color of state law—including those that contract with the state to provide essential services to prisoners—are treated as municipalities for purposes of Section 1983. *Dean v. Centurion Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). To prevail on a claim against GEO Group, Mr. Hatton must first show that he was deprived of a federal right and that the deprivation was caused by a GEO Group custom or policy or failure to implement a needed policy. *Id.*

Further, a "pivotal requirement" for any practice or custom claim is a showing of widespread constitutional violations. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020).

12

While it is not "impossible" for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, "it is necessarily more difficult . . . because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Id.* at 426−27 (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)).

"When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003).

Here, Mr. Hatton has designated no evidence of widespread constitutional violations. *See Hildreth*, 960 F.3d at 426. In addition to his own injuries, Mr. Hatton testifies to only one other similar incident (Dkt. 70 at 5). As the Seventh Circuit has noted, "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (internal quotes and citations omitted). Mr. Hatton's testimony identifies only Officer Smith as responsible for these violations on two occasions and that is simply not sufficient to create a question of material fact. Moreover, GEO Group cannot be held liable for the individual actions of its employees under the common law theory of respondeat superior. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Accordingly, GEO Group is entitled to summary judgment on Mr. Hatton's practice or custom claim.

### IV.  MR. HATTON'S REMAINING MOTIONS

Mr. Hatton moved to file a second amended complaint on January 7, 2024, three months after the deadline to do so and two weeks after the deadline to serve discovery (Dkt. 46). Mr.

Hatton indicates in his Motion to Amend Complaint that he moved to amend his complaint a second time in order to clarify his requested relief and facilitate a settlement of this matter. *Id*.

"Federal Rule of Civil Procedure 15 provides that, as a general rule, a court 'should freely give leave [to amend] when justice so requires.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Fed. R. Civ. P.* 15(a)(2)) (alteration in original). But when, as here, a plaintiff moves to amend his complaint after the deadline, the Court applies the "heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). Coming as it did on the eve of Defendants filing their Motion for Summary Judgment, there is no good cause to grant the request. Defendants were free to take cognizance of his revised request for relief when it was filed. Accordingly, Mr. Hatton's Motion to File a Second Amended Complaint is **denied**.

On January 13, 2025, Mr. Hatton filed a Motion to Seal Preliminary Witness List (Dkt. 48), which contains his list of witnesses. He contends that "Defendants are actively retaliating, harassing, and tampering with witnesses" and his witnesses are hesitant to come forward. *Id*. The Court notes that the people on Mr. Hatton's witness list have already been identified in various filings as individuals who have personal knowledge of the events in question and, therefore, are likely to be called as witnesses. The Court discerns no sensitive or confidential information in the Motion that would justify sealing it. *See United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 712 (7th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 2506 (2016). Good cause has not been shown to warrant sealing of Mr. Hatton's witness list, so that request is **denied**.

Finally, Mr. Hatton filed a Motion to Appoint Counsel (Dkt. 49). Because one of his claims has survived summary judgment, the Court prefers that Mr. Hatton be represented by counsel for the remainder of this action. Accordingly, Mr. Hatton's Motion to Appoint Counsel is **granted**.

## V. **CONCLUSION**

For the reasons explained in this Order, Mr. Hatton's Belated Motion to Amend Complaint Dkt. [46], and Motion to Seal Preliminary Witness List, Dkt. [48], are **DENIED**.

Defendants' Motion for Summary Judgment, Dkt. [57], is **GRANTED in part and DENIED in part**. Summary judgment is **granted** as to all claims against Lt. Storms and GEO Group, and summary judgment is **granted** on Mr. Hatton's First Amendment Retaliation claim against Officer Smith. Summary judgment is **denied** on Mr. Hatton's Eighth Amendment claims against Officer Smith, and that claim shall proceed.

Mr. Hatton's Motion to Appoint Counsel, Dkt. [49], is **GRANTED**. The Court will attempt to recruit counsel to represent Mr. Hatton in this case, and once counsel has been recruited, the Magistrate Judge is asked to schedule a telephonic status conference to discuss further proceedings.

**The Clerk is directed** to remove Lt. Storms and GEO Group as defendants on the docket.

**SO ORDERED.**

Date: 09/26/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

TIMOTHY N. HATTON
231193
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

Magistrate Judge Baker

15